UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-1(b)**
*[Enter your name, address and telephone number]*

MAUREEN  DEGEORGE
PO BOX  134
Colts Neck  NJ  07722

U.S BANKRUPTCY COURT
FILED
TRENTON, NJ

2020 MAR 25  P 12: 09

JEANNE A. NAUGHTON

BY: C. Kelly

DEPUTY CLERK

In Re:
*[Enter the debtor's name(s)]*

MAUREEN  DEGEORGE

Case No.: _18-27374 (KCF)_
*[Enter the case number]*

Chapter: _7_
*[Enter the chapter; example: 13]*

Hearing Date: _MARCH 32, 2020_
*[Enter the hearing date]*

Judge: _FERGUSON_
*[Enter the Judge's last name]*

## NOTICE OF MOTION TO

*[Enter the relief sought]* Response  to  ANDREA DOBIN, CHAPTER 7
TRUSTEE'S  OPPOSITION TO  MOTION OF DEBTOR FOR
AUTHORITY TO INITIATE SUIT AGAINST  TRUSTEE
*[Enter your name]* MAUREEN DEGEORGE has filed papers with the court to *[Enter the relief sought]*____

**YOUR RIGHTS MAY BE AFFECTED. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one).**

If you do not want the court to grant this motion, or if you want the court to consider your views, you or your attorney must file with the clerk at the address listed below, a written response explaining your position no later than 7 days prior to the hearing date.

Hearing Date: _MARCH 31, 2020_
*[Enter the date of the hearing]*

Hearing Time: _10:00 AM_
*[Enter the time of the hearing]*

Hearing Location: _US BANKRUPTCY COURT_
*[Enter the location of the hearing]*
_402 E STATE STREET_
_TRENTON  NJ_

Courtroom Number: _____
*[Enter the courtroom number]*

1.      Ms. Dobin was the trustee in my Chapter 7 Bankrutpcy.

2.      I met with Ms. Dobin for the first time at The First Meeting of Creditors on September
26, 2018. My ex husband had already contacted Ms. Dobin, but he did not come to The
First Meeting of Creditors.  At this time, my ex husband was telling me he did not believe
that I was in Bankruptcy. Ms. Dobin did not tell me that she had been contacted by my
ex husband at that time, and I had no idea that he was involved in my Bankruptcy.

3.  Ms. Dobin asked questions about the marital home, 3 Hialeah Drive, Colts Neck, New
Jersey, where I was residing with my two minor children.  Ms. Dobin did not inform me
that she had already communicated with my ex husband.  In paragraph "7" of Ms.
Dobin's Certification, she states, "I do not recall the first time I spoke with Mr. DeGeorge,
but I believed he called me.  During that time, he agreed to cooperate in my sale of the
property."  Throughout Ms. Dobin's Certification, as in her past Certifications submitted to
the Court, Ms. Dobin has explained that she and my ex husband had an agreement that
her involvement in the sale was his reward, since he would need to give her his share of
the proceeds in order for her to justify a sale of the property; however, Ms. Dobin states
in her Opposition to my conversion to Chapter 13, that she wanted to help my ex
husband get his share of the proceeds.  Ms. Dobin's contradictions are just as clear as
her reason for being evasive about when she began communicating with my ex
husband, and that is because, instead of acting as the Chapter 7 trustee in my
Bankruptcy, she chose to conspire with my ex husband, before ever even speaking to
me, and had decided that she was going to secretly communicate with my ex husband,
and allow him to control my Bankruptcy.

4.  At the First Meeting of Creditors, Ms. Dobin asked me questions regarding the value of
the property and the resulting equity if we had accepted the only offer we had received of

$500k, "..So, it looks like there is equity (in the) property even if you sell it for $549. Right? Cause there is $43,000 from the HELOC. That's $400,000 worth of debt. If you sell it for $500,000, there is still money sitting out there." I remember, at the time, I was trying to do the math in my head, because I knew that there was more than $400k owed with the mortgage and the HELOC, but I was nervous and stressed, of course, and I didn't have a chance to explain the numbers. Ms. Dobin now says that she had reached a "tentative conclusion that there was a reason to sell the Property for the benefit of creditors," but, at that time, there was approximately $389,000 owed to the first mortgage, because the payments had not been made for four months, $44,000 owed to the HELOC, bringing the total amount to $423,000 owed on the house. Even a sale of $525,000, after the 5% real estate commission and the $4,400 Real Estate Transfer Tax, would have left $71,600. I had claimed a $23,675 exemption, so that would have left $53,925, and my ex husband would get half of that, which would have been approximately $27,000. That would have left approximately $27,000. Ms. Dobin's trustee commission would have been approximately $15,750. This would have left approximately $11,250, which, of course, since Ms. Dobin had hired her law firm, they, too would have to be paid. I owed more than $65,000 in unsecured debt.

According to the Handbook for Chapter 7 Trustees:

**"A Chapter 7 case must be administered to maximize and expedite dividends to creditors. A trustee shall not administer an estate or an asset in an estate where the proceeds of liquidation will primarily benefit the trustee or the professionals, or unduly delay the resolution of the case. The trustee must be guided by this fundamental principle when acting as trustee. Accordingly the trustee must consider whether sufficient funds will be generated to make a meaningful**

> **distribution to unsecured creditors, including unsecured priority creditors, before administering a case as an asset case. 28 U.S.C. 586"**

5.    Ms. Dobin says my testimony was "..peppered with information about issues she has with her ex-husband, Bruce DeGeorge. I had no idea the extent to which she had a problem with him or her sensitivity with regard to my interactions with him." The only information about my ex husband that I gave was the financial issues, regarding the Court withholding most of my support so he could make the mortgage payment, and he did not make any payments. This was my personal Bankruptcy, therefore, I had no reason to inform Ms. Dobin of my "problems" with my ex husband. My ex husband did not come to The First Meeting of Creditors, so I had no idea that Ms. Dobin had any contact with him. If I had been informed of the interactions that Ms. Dobin had already had with my ex husband at that time, it would have saved me the fear and anxiety that I had experienced when my ex husband had called me and told me about the email that Ms. Dobin had sent to my attorney, that very morning, asking if I would "vacate the property." This email is dated Ocotober 1, 2018. Ms. Dobin states, "....**I have been investigating the value and saleability of the Debtor's house in this case. I have come to learn that the Debtor, herself, may bear some responsibility for the property not selling. This is consistent with the impression she left with me, i.e., that she knows that the house must be sold, but is unrealistic about the sale price and not particularly motivated to sell the property.**

**My question is this: Will the Debtor vacate the property so that it can be sold? My understanding is that the property does not show and her leaving the property would improve its value. I am also told that she is not particularly cooperative in the showing process.**

**I don't want to traumatize her any more, but with this amount of equity in the property, I think I need to be proactive in moving quickly to maximize its value."** Ms. Dobin had informed my ex husband of this email, before she had even sent it, which is, according to the Department of Justice's website, an act of stalking. Ms. Dobin did not have a responsibility to keep my ex husband apprised of emails she was sending to my attorney, while making sure that my attorney and I did not know that she was communicating with him. Ms. Dobin does NOT say that it was actually my ex husband who told her these lies about me, she clearly intended to keep her interactions with him a secret. Perhaps at the time, Ms. Dobin was not aware of the TRO's and all of the abuse and violence that I had experienced, the GPS that I had on my car, coming home to find my ex husband waiting outside for me, etc., but what reason did she have for not disclosing that she was communicating with him? Ms. Dobin refers to "this amount of equity"- what amount of equity?   In Ms. Dobin's response to my Motion to Compel Abandonment, which I already submitted as Exhibit "K" in this Motion, she included my ex husband's share of the proceeds in her amount of money she would gain for the estate, explaining that  early on in this process, he had agreed to give her his share of the proceeds, because her involvement was her reward.  It is clear that Ms. Dobin knew, from the beginning, that there was no financial benefit for my unsecured creditors if she were to sell my property. According to my ex husband, he had never agreed to give up any of his money.

6.      Ms. Dobin had already been influenced by my ex husband to sell the property, before we met at The First Meeting of Creditors, and, according to her, he had agreed that she could have his share of the proceeds, since, according to the rules governing the trustee in a Chapter 7 Bankruptcy, she couldn't sell my assets if there was going to be more money for her and the professionals, than there would be for unsecured creditors.  According to the Handbook for Trustees: **"Neither a trustee nor any of the trustee's employees may solicit or accept any**

gratuity, gift, or other remuneration or thing of value from any person, if it is intended or offered to influence the official actions of the trustee in the performance of the trustee's duties and responsibilities." My ex husband influenced Ms. Dobin to not follow the rule that she is obligated to follow, but, instead, she did, indeed, unduly delay the resolution of my case, which was exactly what my ex husband wanted. In this case, according to Ms. Dobin's own testimony, and in the email that Ms. Dobin had sent to me in response to my offer to redeem the property, Ms. Dobin was interested in protecting "his rights" and not acting as the Chapter 7 trustee.

7.    My ex husband has told me that he was in contact with Ms. Dobin, prior to the First Meeting of Creditors, and it is obvious, that Ms. Dobin had already communicated with him, prior to the meeting. Ms. Dobin can easily prove when their communications began, and I request that Ms. Dobin produce for the Court all written communication with my ex husband, from the very first email, to the very last. Ms. Dobin had extensive communications with my ex husband for months, and he made his intentions and motives quite clear to her. During the month of October, my ex husband was telling my children and me that the trustee was going to force us to get rid of our pets, that we were going to come home and find the door locked and we would not be able to get our things, and we would be evicted. The immense mental and psychological distress that my children suffered during this time was due to Ms. Dobin's inappropriate behavior. Ms. Dobin was not supposed to be secretly conspiring with my ex husband, her duty was to follow the Bankruptcy Code, and had she done that, my children and I would not have had such an awful experience. My ex husband was angry and trying to gain control, and Ms. Dobin gave it to him. The Federal Bankruptcy Court that Ms. Dobin is working for as Chapter 7 trustee should not have become one more vehicle for my ex husband to have used to gain control of my life, but Ms. Dobin gave him the wheel, while demonizing me to the Court. I

originally did not file for Chapter 13 because I did not have enough equity in my share of the

property.  My Chapter 7 case should have been resolved quickly, as the lack of equity was clear.

Ms. Dobin's desire to help my ex husband destroy me was just as clear when she wrote in her

Opposition to Convert, **"Here it is clear that the Debtor's motivation for seeking conversion**

**to a Chapter 13 is to obtain a tactical advantage.  Simply put, the Motion is rooted in bad**

**faith.  Approximately a year ago, the Debtor agreed to sell the Property.  She rejected the**

**only offer received.  She filed the bankruptcy knowing (or she should have known) that**

**the Trustee would sell the Property in light of the acknowledged equity cushion.  She**

**induced Mr. DeGeorge to take action in reliance upon assurances that the Trustee would**

**be exercising control over the sale process rather than the Debtor, who was inflicting**

**injury on his financial status.  The only practical reason the Debtor would want this case**

**to be converted would be for her to regain control of the sale of the Property-which she**

**had failed at miserably already.  A conversion to Chapter 13 will allow the Debtor to**

**regain complete control over the sale process, including the price at which the Property**

**is listed, when to show the Property, whether to reject an offer that would otherwise**

**result in sufficient equity, and when to vacate.......The only possible motivation for**

**converting this case would be to stall the sale of the Property and continue living there**

**for free, all while preventing Mr. DeGeorge from receiving his share of the proceeds and**

**allowing equity in the Property to further erode--reducing the amount he will ever receive.**

**The Court cannot sanction this dishonest, inequitable behavior.....The sale of the**

**Property must benefit unsecured creditors after payment of administrative claims. When**

**the cost of a Chapter 7 administration is balanced against the cost associated with**

**leaving a Debtor with improper and counter-productive motivation in charge of selling**

**real property, this Court must side with the Trustee..."** Ms. Dobin went on to insult, offend,

and outright lie about me and my motives, while painting my ex husband as my victim,

submitting an email to the Court from him, where he directly addresses me, just to let me know

that he will always be in control of what I do.  That email was another incident of the stalking that

Ms. Dobin not only allowed, but actively participated in, by delivering it to the Court, on my ex

husband's behalf.  Ms. Dobin knew that I was not living there for free, but that my ex husband

was allowed to keep $2,815 a month of our support, so he could pay the mortgage directly, but,

again, Ms. Dobin **KNOWINGLY LIED** to the Court.  My conversion was not rooted in "bad faith"

it was rooted in desperation to keep the person who was so angry at me, who wanted to bring

as much harm as he could to me, from having any more control over my life, so I could get away

and move on with my life.

8.    Ms. Dobin, again, is contradicting herself, because, in the above quote, she acknowledges

that there isn't a financial benefit to my unsecured creditors, but that she should be paid to

administer the case because I am such a bad person who only wants to hurt my ex husband.

Ms. Dobin's place as my Chapter 7 trustee was not that of my ex husband's savior.  Our issues

regarding the JOD belonged in the Family Court, and, as I had submitted already, I had tried to

re list the property for sale when the first listing expired, but my ex husband refused to sign the

contract.  Ms. Dobin also states that my ex husband was anxious to receive his share of the net

proceeds, however, in her response to my Motion to Compel Abandonment, Ms. Dobin explains

that my ex husband had agreed, early on in the process, that he would not be getting his share

of the proceeds, since his reward was Ms. Dobin's involvement, i.e. he basically was paying her

to allow him to change my Chapter 7 Bankruptcy from a no-asset case, to an asset-case, so he

could dictate every aspect of my life.  When Judge Kaplan asked Ms. Dobin why she included

my ex husband's share of the proceeds in her calculations for the money that would have been

gained for the "estate" Ms. Dobin said that they had agreed he wouldn't be taking his share of

the proceeds.  According to my ex husband, he had never agreed to that, and, in the earlier

submissions by Ms. Dobin, she is claiming her efforts are to help him so he can  get his share of

the proceeds.  In one of the emails that my ex husband had sent to Ms. Dobin, he asks her if he

has to file a claim, since he is claiming his share of the equity, and she tells him his name on the

deed is enough.

9.    Ms. Dobin's realtor, Deb Smith, had come to the property while I was residing in it with my

two minor children, and she had told me that the offer of $500,000 was a fair offer, because the

house needed a lot of work.  Ms. Smith then sent a report to Ms. Dobin that there should be

extensive work done, such as siding the house, to put it on the market for $539,000.  In my

Motion to Compel Abandonment, I had submitted a property that Ms. Smith had on the market

at the time, as a "trustee sale" and the price had been reduced several times.  This was clearly a

pattern to inflate the price and then reduce it to sell it.

10.    The house was not listed by Ms. Dobin.

11.    On November 7, 2018, my Motion to Convert to Chapter 13 was filed.  Several hours later,

Ms. Smith texted me that she wanted to come by and take pictures of the house the next day,

and put it on the market in 48 hours.  I told her that I had filed the motion to convert and I did not

hear from her again until months later.

12.    Ms. Dobin opposed my Motion to Convert based on her desire to help my ex husband,

and not for any benefit of my creditors.  Ms. Dobin does not represent the Family Court, she is

the Chapter 7 trustee, representing the Federal Bankruptcy Court, and she should have followed

the rules stated in the trustee's handbook, which are clear when it comes to administering an

asset case.  Nowhere does it say that she should assist a former spouse, while there is an

active Temporary Restraining Order against him, in controlling and destroying his ex wife's life,

by allowing him to dictate how her Bankruptcy will go.  The property was on the market for six

months, which is not an usually long time for a house in this area, as a matter of fact, the house

directly next door went on the market the day before, and was taken off six months later, without

selling. I had a very strong desire to sell the property and move on, and the Family Court Judge

agreed that I had done everything necessary, and had ordered that my ex husband pay for

landscaping and plumbing issues to be fixed, which he did not comply.

13.    My ex husband did not appear pro se at that hearing, as he sat with Ms. Dobin's counsel,

and her counsel spoke with him and explained the situation to my ex husband. I have appeared

pro se many times at court, and that means you DO NOT have an attorney, in this case, my ex

husband clearly was being represented, and assisted by Ms. Dobin's counsel. Ms. Dobin is not

the "only" person who had the ability to sell the property, since, as she has continually stated,

there was an order from the Family Court. If there was a reasonable offer on the property, and

my ex husband refused to agree to it, then I would have gone to the Family Court, where he

would have been forced to sell, or I would have filed a motion for power of attorney to sell the

property. Judge Kaplan did not see that I had any "bad faith" and clearly found that it was my ex

husband who just wanted to fight me and make my life difficult. Ms. Dobin is now

acknowledging that the Judge denied my motion due to my ex husband's desire to fight me, but

in her email to me, in response to my offer to redeem the property, she stated that she could

not allow me to redeem the property, because her argument that she made in Court, "...(which

**prevented the conversion of your case) addressed the fact that your ex husband was**

**being injured as a result of the failure to have the house sold. Were I to allow you to**

**redeem this house, it would not be sold, the mortgage would go into foreclosure and the**

**argument that the house must be sold to address <u>his</u> rights will have been made in vain.**

**You were under a court order to have the house sold. It should have been sold a long**

**time ago. I am going to sell it now. Please cooperate with Deb Smith so that happens. I**

don't want to have to evict you, but I will if I have to." This is the utmost example of torment

and cruelty, since Ms. Dobin knew that my ex husband was only out to control me and wanted to

see me at his mercy.  Ms. Dobin has submitted an email from my ex husband, to her, which he

sent her on Tuesday, January 8, 2019:

   **"Andrea, I would like to be there on Monday.  Maureen has told me she has a full**

**defense and plans on going after me and my credibility.  To insure she gets her way.  I**

**want this to end this property has to be sold.  I not only want the house sold I want her**

**evicted and I'm fully capable of taking the children to my place of residents.  Do you think**

**it would benefit if I attend?"**  Ms. Dobin has NOT submitted her response to this clearly angry,

vengeful sentiment, but, at the point this email was written, Ms. Dobin and my ex husband are

on a first name basis, and she definitely is not working for the benefit of my creditors, but to

assist in my ex husband's mission to take anything I may have had left away from me.  The

Department of Justice should not have allowed this psychological torture that I was experiencing

through Ms. Dobin's allegiance to my ex husband to continue.  I had filed a complaint with

Martha Hilderbrandt, and she should have investigated these emails between my ex husband

and Ms. Dobin.  The Office on Violence Against Women is part of the same Department of

Justice that Ms. Dobin works for, yet she was allowed to continue to assist my ex husband on

his crusade to harm me any way he could.

14.    The Judge did deny my motion, and Ms. Dobin was allowed to proceed with her campaign

to assist in my ex husband's destruction of my entire existence.

15.    I knew that the daily torture that my children and I were going through, due to Ms. Dobin's

actions, was wrong, and I had to put a stop to the pain and suffering that my children and I were

experiencing, so I filed a Motion to Compel Abandonment.  It was quite clear by then that Ms.

Dobin had formed some sort of relationship with my husband, and he was in control of how my

Bankruptcy was proceeding; therefore, I knew that he would continue to keep me in Bankruptcy as long as he could. Ms. Dobin filed a Cross-Motion to Compel Cooperation with her sale process. In that motion, Ms. Dobin acknowledges that my share of the equity was not worth anything to anyone but her and her law firm, so she said that my ex husband was giving her his share of the proceeds, which was never true.

16.    Ms. Dobin's statement that "Mr. DeGeorge suddenly changed his mind. He no longer would consent to my sale of his interest in the Property" is contradictory to her position as Chapter 7 trustee, because she has the right to force the sale. Ms. Dobin is not saying that she no longer could claim he was giving her his proceeds, therefore, making it against Bankruptcy Code for her to sell the property, which it was from the beginning. Ms. Dobin did continue with her attempts to sell the property, at the hearing for my Motion to Compel Abandoment, she told Judge Kaplan that she would be getting my ex husband's proceeds from the sale. Fortunately for my children and me, my ex husband had sent a screen shot of that email to my daughter, so I had already submitted it to the Court, and the Judge knew that my ex husband was not going to give her anything, and ordered Ms. Dobin to abandon the property. The months leading up to that point were unbearable for my children and me.

17.    Ms. Dobin does not mention that the "March email" she submitted was actually in response to an email she had sent my ex husband, which she submitted as her Exhibit "A" I had already quoted it in paragraph "16." Ms. Dobin states that the email she submitted is repeated in its "entirety" in her paragraph "17" but the email she submitted, **Exhibit "A"** is not the same email, and I assume that she submitted this very telling, very disturbing exchange between two people who clearly had a strong desire to bring me harm, by mistake. Apparently, my ex husband has told Ms. Dobin that he no longer wanted her involved in the property issues, and, so as to incite some kind of memory and remind my ex husband how angry he was at me and

how he wants to harm me, she states: **"Below is an email dated January 8, 2019 in which you tell me that you want me to sell the house and evict your wife. Has your position changed?"** Is that really what a Chapter 7 trustee is supposed to be doing? Is the Federal Bankruptcy Court a place where its representatives will try to bring out the rage in a person, so they can benefit financially? By this time, Ms. Dobin was WELL AWARE of the four previous Temporary Restraining Orders and the current Civil Restraints agreement, so why would she try to encourage any type of anger that my ex husband has toward me? Ms. Dobin's words are actually more chilling to me than my ex husband's, because the Federal Court has entrusted Ms. Dobin with so much power over peoples' lives, and for her to want to help someone unleash their rage and anger the way she clearly does, is scary. Ms. Dobin accused me of acting in "bad faith" and having "improper and counterproductive motivation," but it is clear she was advocating for my ex husband when she made these accusations, and it is also clear that the people who had improper motives were both my ex husband, and Ms. Dobin. The injustice of this is that my children and I were suffering tremendously, our lives were basically put on hold, where I really had no control, but Ms. Dobin was using her power as the Chapter 7 trustee to assist my ex husband in his mission to see me out on the streets. On February 15, 2019, I had offered Ms. Dobin $15,000 to redeem the property, she had rejected my offer to protect **"his rights"** I had even sent Ms. Dobin a recording of my ex husband screaming and cursing at me, telling me he how much he hates me and wants me dead, trying to get her to understand that my situation with my ex husband was not a game, but she did not care. At the time that Ms. Dobin was reminding my ex husband how much he wanted to hurt me, have me evicted and take my children from me, she was well aware of the "extent of the problems" that we had, and was not acting as a Chapter 7 trustee. I do not believe that if Judge Kaplan had read those emails between them, that he would have supported her actions. Clearly, my ex husband had

been expressing some very bad things about me, and a Chapter 7 trustee should never have been involved in that, nor should the Chapter 7 trustee have encouraged it.   Ms. Dobin was not acting in her capacity as Chapter 7 trustee when she did these things; therefore, she should not have immunity from my lawsuit.

18.    In paragraph "16" Ms. Dobin states "the case took a critical turn - one that has never made its way into the Court docket because it didn't need to.  Mr. DeGeorge suddenly changed his mind.  He no longer consent to my sale of his interest in the Property"; therefore, Ms. Dobin tried to retrieve "something" for the Estate, and accepted my redemption offer of $15,000, the one she originally refused because she had to **protect "_his_ rights"** but Ms. Dobin did not tell me, of course that my ex husband had told her he didn't want her to be involved any more; in fact, she told me in one of our many emails, that he would probably object.  The only people who would have benefited from that money would have been Ms. Dobin and her law firm.  I don't believe that this sort of underhanded lying is a standard that is acceptable for a United States Bankruptcy Trustee.

19.    I did not know what to believe at this point.  My ex husband said he had told Ms. Dobin he wasn't agreeing to anything with her anymore, Ms. Dobin was telling me he could object, and I was fearful that they were conspiring against me, and I was going to end up in a worse position.  I can't describe the feelings that I experienced, the violation of privacy, the sense that no matter what I did I was not safe from the harm that my ex husband wanted to see come to me because he was so angry that he was not in control anymore.  It was already established, months before that Ms. Dobin and my ex husband were working against me, together, stalking me, threatening me, I was overwhelmed with anxiety.  It was clear that Ms. Dobin was basically working with, and for, my ex husband, so I knew I really could not trust her, I couldn't trust anybody.  Judge Kaplan did express his support for Ms. Dobin's actions, but he did not know exactly what they

were.  I do not think that Judge Kaplan would support her trying to incite my ex husband's rage against me, to try to remind him just how much he had hated me when he wrote that he wanted me to be evicted in January.  I don't believe that any person representing the Federal Bankruptcy Court would approve of manipulating a person who clearly has been violent against me in the past, to try to get him to do what she wanted, so she could profit financially.

20.    Ms. Dobin's psychic abilities are not as keen as she believes.  Due to the severe mental anguish and pain and suffering that my children experienced over the eight months that I was in Bankruptcy, the constant, unbearable stress of not knowing when their pets will be taken away, when they will be evicted, etc., my daughter, who already had a serious, life-altering medical condition, ended up in the hospital due to another, extremely serious, life-altering condition, brought on by stress.  While Ms. Dobin had stepped outside her role as Chapter 7 trustee, and into the role of my ex husband's savior, demonizing me, threatening me with eviction, making up lies about me, stalking me, for no reason other than helping my ex husband bring me harm and of course, for financial gain for herself and her law firm, my children lived in constant worry about what would happen to us.  As my ex husband had written to her on March 18, 2019, and explained how his "children were in tears because they think the trustee is going take there [sic] pets and evict them…" that was a regular concern and worry for them, as my attorney first wrote to explain that to Ms. Dobin on October 25, 2018.  **Exhibit "B"** As a result of my child's condition, our lives have taken a turn that I would never have expected.  My concern has always been what is best for my children.

21.    Ms. Dobin did not get "caught in the cross-hairs of these embattled former spouses" she willingly joined my ex husband on his journey to destroy me, giving him the power over my Bankruptcy, that he never should have had.  Ms. Dobin was not an innocent bystander in this awful nightmare that she turned my family's life into, she was the creator of the nightmare.  Ms.

Dobin had a duty as Chapter 7 trustee to abide by the Bankruptcy Code, which states "...**A**

**trustee shall not administer an estate or an asset in an estate where the proceeds of**

**liquidation will primarily benefit the trustee or the professionals, or unduly delay the**

**resolution of the case.  The trustee must be guided by this fundamental principle when**

**acting as trustee.  Accordingly, the trustee must consider whether sufficient funds will be**

**generated to make a meaningful distribution to unsecured creditors, including unsecured**

**priority creditors, before administering a case as an asset case." 28 U.S.C. 586**  The

mandate Ms. Dobin says she was following, 11 U.S.C. 704, comes AFTER establishing that

there is a meaningful distribution to unsecured creditors.  I have read these requirements over

and over, and I still don't see where it states "**If the former ex spouse of the debtor contacts**

**the trustee, before the First Meeting of Creditors, and tells you lies that he had already**

**submitted to Family Court, and had been proven false, and asks you to allow him to**

**control the Bankruptcy, then you don't have to follow the Bankruptcy Code."**  I also don't

find any provisions in the Bankruptcy Code that state, "**If you feel that you want to help a**

**vengeful ex spouse who wants to regain control over the debtor, then engage in stalking**

**the debtor with her ex husband, submit lies about her to the Court, even if it means that**

**the trustee and her law firm, as well as her real estate agent, will be the only ones to**

**profit.  Give legal advice and assistance to an angry ex spouse who wants to see his ex**

**wife evicted and take her children from her.  Even though the 28 U.S.C. 586 of the**

**Bankruptcy Code explicitly states that you should NOT administer the estate when only**

**you will profit from selling the debtor's assets, if you feel like helping out the ex spouse**

**hurt the debtor in the worst possible way, even though there is a Temporary Restraining**

**Order in place while you are doing it, you can do it anyway.  If the ex spouse decides,**

**after months of torturing his ex spouse and his children, that he wants you to stop,**

remind him how much he hates his ex wife.  **Send him an email that he had sent you that**

**shows how much he wants to ruin her, incite the rage in him, the same rage that caused**

**his ex spouse to seek four TRO's against him.  IF that doesn't work, then try to get**

**whatever you can from the debtor, even though she is a single mother with two children,**

**and you have already kept her in Bankruptcy for months longer than you should have,**

**she will be desperate to stop her ex husband from controlling her through the**

**Bankruptcy Court."**  No, Ms. Dobin was not following mandates, nor was she "caught"

anywhere, between anyone.  What happened to Ms. Dobin, which she found out too late, was

that she was manipulated by my ex husband, but she allowed that to happen.  If Ms. Dobin had

followed the Bankruptcy Code, things would be very different.

22.    Ms. Dobin has stated in her submissions to the Court in her certification in her Opposition

to my conversion to Chapter 13 that selling the property would only cover administration costs.

In my paragraph "7" I quote just some of her lies that she submitted about me, "improper and

counterproductive motives" injuring my ex husband financially, bad faith, etc.  Her entire

certification was based on helping him, as she stated in her email response to my offer of

redemption.  **Exhbit "C"** It is abundantly clear in the emails between Ms. Dobin and my ex

husband, that she is grossly focused on my ex husband's "problems" with me, to the point

where she was encouraging my ex husband to remember his anger and sinister motives.

**Exhibit "A"** Again, Ms. Dobin is trying to paint me as a dishonest, devious person, suggesting

that I have somehow gained access to emails that I was not supposed to, and that is just

indicative of Ms. Dobin's disdain for me.  The emails that were sent in October, she had sent to

my attorney at the time, because he had told her how upset and stressed I was over what my ex

husband was saying about what he would have the trustee do to us, and Ms. Dobin's response

to it.  **Exhibit "D"** As for the emails between Ms. Dobin and my ex husband, my ex husband

forwarded them to me, or sent a screen shot to my daughter.  I take offense to Ms. Dobin's

implied accusations that I have done something improper to obtain emails.

23.      Gaslighting is an extremely destructive tool in Domestic Abuse, because it makes

someone feel as though they are going insane, since they know what they saw or experienced,

but someone else is telling them, over and over again, that it is **NOT** happening.  Ms. Dobin

keeps saying that she was not taking action for my ex husband's sole and exclusive benefit, but

the email that she wrote to me, **Exhibit "C"** clearly states just that as her motive, as well as her

entire submission to the Court in her opposition to my Motion to Convert.  Ms. Dobin did

conspire with my ex husband, as well as engage in his stalking of me, by informing him of

communications between her and my attorney, but not disclosing that she was communicating

with him, causing me great stress, anxiety, emotional and psychological pain and suffering when

he would tell me what he knew, but I did not know he could know these things.  When Ms. Dobin

submitted a letter to the Court, written by my ex husband, where he directly speaks to me, she,

again, engaged in stalking, because she was allowing him to get to me, through her.  Ms. Dobin

has given contradictory reasons as to why she wanted to sell the property, but it is clear in her

emails to me, and her Opposition to my conversion that she was only doing it for my ex

husband, and her own financial gain.  Ms. Dobin says that she and my ex husband had reached

an agreement, and he breached that agreement, but when she attacked me and my character,

told outrageous, offensive lies about me to the Court in her submissions, she never mentioned

this agreement.  As a matter of fact, Ms. Dobin only stated that I was hurting my ex husband

and she was working to get his share of the proceeds for him.  The only time she brought up this

"agreement" was when I filed my Motion to Compel Abandonment, and outlined how there was

no monetary benefit to my unsecured creditors, that was when Ms. Dobin first mentioned this

supposed "agreement."  This pattern of lies and deception should not be tolerated by a

representative of the Federal Bankruptcy Court, whose title has the core word of **"TRUST"** in it, because the standard of a Trustee should always be upheld, regardless of any personal agenda the trustee has.  My ex husband cannot be blamed, because he could only interfere and do what he did because he was allowed to, actually encouraged to, by Ms. Dobin.  Ms. Dobin had no business in my divorce, nor in protecting "his rights" because the issues that Ms. Dobin felt so compelled to involve herself in were not for the Bankruptcy Court.  Ms. Dobin was the Chapter 7 trustee, she didn't need my ex husband's approval or consent to sell the property, if she was allowed to sell it according to the Bankruptcy Code, but she was not.  My children and I have been traumatized by the actions of Ms. Dobin.  Ms. Dobin deserves no immunity or protection from the Federal Bankruptcy Court, because her actions in my case were despicable. I hope that the Court can see the communications between Ms. Dobin and my ex husband the same way a State Court would see them if they were hearing it as a Domestic Violence case, because the acts of stalking and gaslighting are clear.  The Department of Justice's Office of Violence Against Women should make sure that this does not happent to another victim.  My rights, and my children's rights, were violated over and over again throughout the ordeal that Ms. Dobin put us through.  Ms. Dobin must be held accountable for her actions.

24.    Ms. Dobin states she "harbors no animus" against me, but these are some quotes of what she wrote, about me, to the Court:

"Thus, since the petition was filed, the Debtor has resided at the Property free of charge while the equity in the Property erodes and Mr. DeGeorge's credit suffers."  Ms. Dobin knew this was a lie, since the amount of $2,815.00 was being withheld from our support so my ex husband could make the mortgage payments, which he did not make.  Ms. Dobin intentionally lied about me.

"The Debtor is seeking a conversion in bad faith" Ms. Dobin KNEW that my ex husband

wanted to take absolutely everything he could from me, causing me maximum amount of

harm, the emails between them make his motives clear, so, in order to help him, she

attacks me in Court.

"It is clear that the Debtor's motivation for seeking conversion to a Chapter 13 is to

obtain a tactical advantage.  Simply put, the Motion is rooted in bad faith." After the

"voluminous" emails that I have submitted, and the extremely disturbing email exchange

that Ms. Dobin has submitted between her and my ex husband, where she tries to

remind him how he wants to take my children and have me put out on the street, it is

quite clear that I was not seeking to convert to obtain a tactical advantage, but to keep

the person who was so angry with me, who I had to have four TRO's and a Civil

Restraints agreement with, to keep him from having further control over my life.  He was

given this control by Ms. Dobin, and the Federal Bankruptcy Court should not tolerate

her actions, and the United States Department of Justice should make sure that the

Office of the United States Trustee does not allow this to happen to another victim of

Domestic Violence.

"The only practical reason the Debtor would want this case to be converted would be for

her to regain control of the sale of the Property-which she had failed at miserably

already"

"the only possible motivation for converting this case would be to stall the sale of the

Property and continue living there for free, all while preventing Mr. DeGeorge from

receiving his share of the sale proceeds and allowing equity in the Property to further

erode--reducing the amount he will ever receive.  The Court cannot sanction this

dishonest, inequitable behavior." Ms. Dobin's motives are clear, as is her animosity.

*Maureen DeGeorge*                    *March 19, 2020*

**Andrea Dobin**  2/15/19

**To:** jdtayla18@aol.com   **Cc:** Ross >

# RE:  Maureen DeGeorge bankruptcy

Ms. DeGeorge,

Thank you for your analysis, but I cannot take you up on your offer.
The argument that I made in Court (which prevented the conversion of your case) addressed the fact that your ex-husband was being injured as a result of the failure to have the house sold.

Were I to allow you to redeem this house, it would not be sold, the mortgage would go into foreclosure and the argument that the house must be sold to address <u>his</u> rights will have been made in vain.

You were under a court order to have the house sold.  It should have been sold a long time ago.
I am going to sell it now.  Please cooperate with Deb Smith so that happens.  I don't want to have to evict you, but I will if I have to.

Mr. DeGeorge.

Below is an email dated January 8, 2019 in which you tell me that you want me to sell the house and evict your wife.

Has your position changed?

**PLEASE NOTE NEW CONTACT INFORMATION**

**Andrea Dobin, Partner**

**McManimon, Scotland & Baumann, LLC**

**427 Riverview Plaza | Trenton, NJ 08611**

**Direct Dial: 973-323-8667**

**Email: adobin@msbnj.com**

Website

1

Connect with MS&B on **LinkedIn** | **Twitter** | **Instagram**

This message contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy, or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail or contact the sender at McManimon, Scotland & Baumann, LLC by phone at (973) 622-1800 and delete the message. Thank you very much.

**From:** Bruce Degeorge [mailto:brucedegeorge@yahoo.com]
**Sent:** Tuesday, January 08, 2019 8:35 PM
**To:** Andrea Dobin
**Subject:** Court

Andrea I would like to be there on Monday. Maureen has told me she has a full defense and plans on going after me and my credibility. To insure she gets her way I want this to end this property has to be sold I not only want the house sold I want her evicted and I'm fully capable of taking the children to my place of residents. Do you think it would benefit if I attend?

Sent from Yahoo Mail for iPhone

**Sent:** Thursday, October 25, 2018 9:45 PM

**To:** Gary Mason

**Cc:** Fran Denaro

**Subject:** RE: DeGeorge

PLEASE NOTE NEW CONTACT INFORMATION

McManimon  Scotland & Baumann  LLC

Direct Dial:
Email:

Connect with MS&B on

# Exhibit

# A

Mr. DeGeorge,

Below is an email dated January 8, 2019 in which you tell me that you want me to sell the house and evict your wife.

Has your position changed?

**PLEASE NOTE NEW CONTACT INFORMATION**

**Andrea Dobin, Partner**

McManimon, Scotland & Baumann, LLC

427 Riverview Plaza  Trenton, NJ 08611

Direct Dial: 973-323-8667

Email: adobin@msbnj.com

Website

Connect with MS&B on LinkedIn | Twitter | Instagram

This message contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy, or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail or contact the sender at McManimon, Scotland & Baumann, LLC by phone at 973.622.1800, and delete the message. Thank you very much.

**From:** Bruce Degeorge [mailto:brucedegeorge@yahoo.com]
**Sent:** Tuesday, January 08, 2019 8:35 PM
**To:** Andrea Dobin
**Subject:** Court

Andrea I would like to be there on Monday. Maureen has told me she has a full defense and plans on going after me and my credibility. To ensure she gets her way, I want this to end this property has to be sold I not only want the house sold I want her evicted and I m fully capable of taking the children to my place of residents. Do you think it would benefit if I attend?

Sent from Yahoo Mail for iPhone

# Exhibit

# B

**From:** Gary Mason
**Sent:** Thursday, October 25, 2018 6:06 PM
**To:** Andrea Dobin
**Cc:** Fran Denaro
**Subject:** Re: DeGeorge

Andrea - I've spoken with Maureen and, again, told her she needed to cooperate. She's very consumed with the idea that her ex husband is out to get her. I'm sure that he has communicated with you and that you have appropriately shared any information with him as a creditor in this case. However, he has been calling Maureen, advising her that he's spoken with you and that you are going to kick her out of the house and that one day she's going to come home to locks on the door. I told Maureen that you would never have said that and that he is simply trying to manipulate her. She is also dealing with the fact that her alimony was decreased and now needs to get back into family court to reinstate the proper amount, but can't afford counsel so she is trying to get it done on her own. It is a very stressful time for her. If you or your realtor run into any further issues with her, please call me.

Gary

**Sent:** Thursday, October 25, 2018 6:15 PM
**To:** Gary Mason
**Cc:** Fran Denaro
**Subject:** RE: DeGeorge

McManimon. Scotland & Baumann. LLC

**Direct Dial:**

**Email:**

Connect with MS&B on

# Exhibit

# C

**Andrea Dobin**   2/15/19

**To:** jdtayla18@aol.com   **Cc:** Ross >

# RE:  Maureen DeGeorge bankruptcy

Ms. DeGeorge,

Thank you for your analysis, but I cannot take you up on your offer.
The argument that I made in Court (which prevented the conversion of your case) addressed the fact that your ex-husband was being injured as a result of the failure to have the house sold.

Were I to allow you to redeem this house, it would not be sold, the mortgage would go into foreclosure and the argument that the house must be sold to address <u>his</u> rights will have been made in vain.

You were under a court order to have the house sold.  It should have been sold a long time ago.
I am going to sell it now.  Please cooperate with Deb Smith so that happens.  I don't want to have to evict you, but I will if I have to.

| Name and Address of Party Served | Relationship of Party to the Case | Mode of Service |
|---|---|---|
| *[Enter the name and address of the party you served]*<br><br>Andrea Dobin<br>427 River view Plaza<br>Trenton NJ 08611 | *[Enter the party's relationship to the case]*<br><br>Trustee | ☐ Hand-delivered<br><br>☐ Regular mail<br><br>☒ Certified mail/Return receipt requested<br><br>☐ Other _____<br><br>(As authorized by the court or rule. Cite the rule if applicable.) |
| *[Enter the name and address of the party you served]* | *[Enter the party's relationship to the case]* | ☐ Hand-delivered<br><br>☐ Regular mail<br><br>☐ Certified mail/Return receipt requested<br><br>☐ Other _____<br><br>(As authorized by the court or rule. Cite the rule if applicable.) |
| *[Enter the name and address of the party you served]* | *[Enter the party's relationship to the case]* | ☐ Hand-delivered<br><br>☐ Regular mail<br><br>☐ Certified mail/Return receipt requested<br><br>☐ Other _____<br><br>(As authorized by the court or rule. Cite the rule if applicable.) |
| *[Enter the name and address of the party you served]* | *[Enter the party's relationship to the case]* | ☐ Hand-delivered<br><br>☐ Regular mail<br><br>☐ Certified mail/Return receipt requested<br><br>☐ Other _____<br><br>(As authorized by the court or rule. Cite the rule if applicable.) |
| *[Enter the name and address of the party you served]* | *[Enter the party's relationship to the case]* | ☐ Hand-delivered<br><br>☐ Regular mail<br><br>☐ Certified mail/Return receipt requested<br><br>☐ Other _____<br><br>(As authorized by the court or rule. Cite the rule if applicable.) |